UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CASE NO. 1:18-CR-88 |
| ) | |
| v. ) | |
| ) | **SENTENCING MEMORANDUM** |
| ) | **AMANDA LOUISE STONE** |
| AMANDA LOUISE STONE ) | |
| _____ ) | |

NOW COMES the Defendant, Amanda Louise Stone (hereinafter referred to as Mandy), by and through undersigned counsel, Jack W. Stewart, who respectfully submits this Sentencing Memorandum on behalf of the Defendant and offers the following information in support thereof:

## 1. Nature and Circumstance of Offense 3553(a)(1)

As recounted in both the Bill of Indictment and the Presentence Investigation Report, Mandy Stone's involvement in the conspiratorial scheme was both limited in scope and duration. Although engaged in County business for more than thirty-seven (37) years, the Defendant's criminal acts occurred in the last four (4) years of her tenure and are related solely to her duties as both an Assistant County Manager (2005-2017) under the auspices of then Manager Wanda Greene. Over that term, her activities appear to be more aligned with the malfeasance of Jon Creighton than Wanda Greene since both Stone and Creighton became Assistant County Managers in 2005 and served in that capacity through Wanda Greene's retirement in 2017. A major distinction, however, in the respective roles of

1

Creighton and Stone was that Mandy Stone had no oversight, prior knowledge, or experience in negotiating the parameters of the Wiseman (vendor) contract at the time she assumed the duties of the County Manager.

It is also significant that of the twenty (20) travel junkets identified by the Government in the Bill of Indictment, it appears that Mandy Stone willingly participated in only seven (7) of those excursions, all being to Key West, Florida [excepting a single trip to California in June of 2014], and that she never indulged in the more lengthy trips to Vienna, Budapest, San Diego, Vancouver British Columbia or Phoenix, Arizona. That being said, however it, is not denied by this Defendant that any single excursion was a misdeed and came to represent a breach of public trust that was both inexcusable and wrong.

### 2. History and Characteristics of the Defendant 3553(a)(1)

#### A. Personal Characteristics and Family Ties

In addition to the biographical information set forth in paragraphs 43-47 captioned <u>Personal and Family Data</u> at part C. **Offender Characteristics** (pages 9-10 of the Presentence Investigative Report), Mandy Stone wants this Court to know she is a native to this region, born and raised in the Black Mountain community of Buncombe County. Her father, Dick Stone was a distinguished and long practicing member of the Buncombe County Bar for more than forty-five (45) years before his death in 1998. During that period, he served as the Mayor of Black Mountain for twenty (20) years. Her mother, Muriel Stone, was a devout homemaker who raised seven (7) children of which the Defendant was fourth (4th), whose siblings have similarly resided in Western North Carolina throughout their

2

lives.

Mandy Stone first began working for the Buncombe County Department of Social Services in October of 1981 and eventually aspired to become the Director of the Department of Social Services/HHS in 2001. Apart from her chosen avocation, Mandy also assumed the role of parenthood when she became the legal guardian for her great-nephew, age fifteen years old, who has resided with Mandy since birth and is currently a tenth grader at a local High School.

### B. Strong History of Employment and Community Contributions

While Mandy Stone never married, in many ways she was married to her job for the past forty years. Rising from an eligibility specialist to the Director of Social Services, as well as wearing a second hat as the Assistant County Manager and eventually the County Manager, Mandy Stone's leadership became evident throughout the County for more than forty years in victim's advocacy groups, courtroom proceedings and social programs for the indigent and disenfranchised. Mandy was instrumental in implementing a series of reforms and protocols in Social Services' curriculums that are still textbook throughout the State to this day. Her efforts in securing funding and mobilizing support for the construction of a new Family Justice Center, a County Animal Shelter and the Justice Resource Center are commendable. Moreover, her personal projects in founding an Indigent Healthcare Center and the Behavioral Health Crisis Center that addressed needs for both adolescent and adults in Buncombe County are shining examples of her commitment to civic duty.

### 3. Afford adequate deterrence to criminal conduct 3553(a)(2)(b)

Adequate deterrence to criminal conduct can be achieved through a variety of factors beyond the length of a defendant's sentence. Whenever a defendant suffers consequences for her criminal conduct that are separate from those imposed by the Court, the sentencing court should take these collateral consequences or punishment(s) into account in fashioning an appropriate sentence.

Turning to the circumstances surrounding this case, Ms. Stone has *already* been significantly punished. Apart from the public humiliation and shame brought on by her own conduct, the Defendant has paid dearly through financial penalties associated with this case.

With the Defendant's guilty plea to the criminal conspiracy, her felony status following the entry of Judgment will have a substantial impact on the Defendant's ability to obtain gainful employment in any business enterprise in this community. Moreover, given the impact of this conviction on the Defendant and her reputation in the small community of Black Mountain, the felony conviction should serve as a deterrent to other persons in that community who may be similarly situated. All of these collective collateral punishments should be taken into account in fashioning an appropriate and just and fair sentence.

### 4. Final Considerations For Sentencing

**(1)** The financial consequences of this case for Mandy Stone have been profound and severe. While she participated in seven (7) trips over a four year

4

period and received gifts valued between $40,000.00 to $95,000.00, the Defendant has suffered a monthly loss of retirement benefits from a system that she contributed to for over forty (40) years in excess of $3,000.00 per month with an annual loss in income of $33,396.00 for the remainder of her life. Moreover, because of the early withdrawal of funds from her Retirement Plan to satisfy civil claims advanced by the County, Mandy has incurred a significant reduction in the principal sum of her 401k Retirement Plan with the State of North Carolina from $403,000.00 to the final sum of $154,000.00.

**(2)** The imposition of any active sentence will impact the Defendant's ability to provide child care for her only child. That child has lived in the exclusive care of Mandy Stone since birth, and the cost associated with care that has been borne completely by the Defendant. To remove the Defendant from that parental role at a formative age for this child would likely have catastrophic consequences in the long-term development of this child into adulthood.

**(3)** As reflected by her willingness to enter a guilty plea, the Defendant submitted to an extensive debriefing and cooperated early with the Government in this case, including the voluntary return of $12,000.00 in allowable leave to the County before any target letter was directed to her attention. Despite that fact, Mandy Stone has always acknowledged the wrongfulness of her actions, particularly given her adversarial relationship with co-defendant Wanda Greene. Moreover, once Greene left the office, it was Mandy Stone who changed economic development policies in the County to prevent future expenditures of public funds without a public vote or full disclosure that has been corroborated in subsequent

related investigations directed by the United States Attorney's Office. The timeliness and completeness of her cooperation with the Government has been received without question and those actions were undertaken by the Defendant in an honest effort to atone for her own misconduct.

**(4)** More than any other factor or circumstance in this case, the entry of a final judgment will brand the Defendant as a convicted felon for the remainder of her natural life. While that label does not significantly impact many Defendants who appear before the Court, in this case, that classification could not be more damning. Mandy Stone was born and raised here by a local family that was highly respected both in the community and throughout the County. The fact that she was involved in this sordid affair has forever tarnished her good reputation and the name of her family which she must endure for the rest of her life. The public humiliation and shame brought upon the Defendant by her own actions that have resulted in this conviction should serve as a deterrent to other persons in this community who may be similarly situated.

## Conclusion

The Defendant respectfully submits that this Court has both the legal authority and factual basis to enter a substantial downward departure and/or variance in this case. More specifically, the Defendant highlights the following mitigating circumstances for consideration by the Court:

- Her substantial assistance, cooperation and respect for law enforcement.
- Her lifelong participation in and contribution to her community.

- The sufficiency of her current punishment imposed to date.
- The substantial financial restitution and diminution of benefits.
- The unique role she fulfills as a single mother to her child.
- Her lack of any criminal record or background.

For all of these reasons, the Defendant respectfully requests this Court to grant a downward departure and/or variance and order a non-active sentence. This outcome would truly be "sufficient, but not greater than necessary," to achieve all relevant sentencing goals.

Respectfully submitted, this the ___ day of August, 2019.

JACK W. STEWART

State Bar No.: 10053

61 North Market Street

Asheville, NC 28802

(828) 253-5673

jack@jackstewartlaw.com

CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date served the foregoing upon all other parties and counsel of record by depositing a copy hereof in a postpaid wrapper in a Post Office or official depository under the exclusive care and custody of the United States Postal Service properly addressed and by submitting it to the Court via electronic transmission.

THIS the _____ day of August, 2019.

JACK W. STEWART
Attorney for the Defendant